UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERI H.,                                    Case No. 22-11786

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL            Curtis Ivy, Jr.
SECURITY,                         United States Magistrate Judge

          Defendant.

_____/

## OPINION AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 17)

Plaintiff Geri H. brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance Benefits and

Supplemental Security Income under the Social Security Act.  This matter is before

the United States Magistrate Judge for an Opinion and Order on Plaintiff's motion

for summary judgment (ECF No. 15), the Commissioner's cross-motion for

summary judgment (ECF No. 17), Plaintiff's reply (ECF No. 18) and the

administrative record (ECF No. 10).

For the reasons below, the Court **DENYS** Plaintiff's motion for summary

judgment (ECF No. 15), **GRANTS** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRMS** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff alleges her disability began on June 3, 2016.  On July 18, 2017, she applied for disability insurance benefits.  In her disability report, she listed ailments which diminished her ability to work.  Her application was denied on January 5, 2018.

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  On September 24, 2018, ALJ Roy E. LaRoche Jr. held a hearing, at which Plaintiff and a vocational expert ("VE"), Diane Regan, testified.  On January 29, 2019, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff later submitted a request for review of the hearing decision.  On August 8, 2020, the Appeals Council remanded Plaintiff's request for review, advising the ALJ to give further consideration to the Plaintiff's maximum residual functional capacity and to provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.  In particular the Appeals Council remanded for focus on the claimant's use of a cane, consideration of whether the Plaintiff's left shoulder impairment was a severe impairment with resulting functional limitations, evaluation of the Plaintiff's alleged symptoms and rationale of evaluation of symptoms, consideration of the third-party function report from September 6,

2017, and, if warranted, to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.  (ECF No. 10, PageID.182-87).

The ALJ held a second hearing on November 25, 2020, and a vocational expert, John N. Stokes, testified.  On December 11, 2020, the ALJ issued a decision denying Plaintiff's claim.  Plaintiff requested review from the Appeals Council, which the Appeals Council denied on June 30, 2022.  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 3, 2022.

**B.    Plaintiff's Medical History**

The relevant portions of Plaintiff's medical record are discussed as required in the analysis portion of this order.

**C.    The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 3, 2016, the alleged onset date.  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the left shoulder, and asthma.  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments. **Between Steps 3 and 4** of the sequential process, the ALJ

evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that

Plaintiff had the RFC to perform sedentary work except that:

> she must be allowed to alternate between sitting and
> standing positions while remaining at her workplace no
> more frequently than every 20 minutes; can never climb
> ladders, ropes, or scaffolds; can occasionally balance,
> stoop, kneel, crouch, crawl, and climb ramps and stairs;
> can frequently reach, handle, and finger with the left
> upper extremity; can have no more than moderate
> exposure to atmospheric conditions such as dust, fumes,
> gases, and other respiratory irritants, as well as wetness,
> humidity, and extreme cold; can never work at
> unprotected heights or around dangerous, moving
> machinery; and she must be allowed to use a handheld
> assistive device such as a cane for ambulation.

At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past

relevant work. At **Step 5**, considering Plaintiff's age, education, work experience,

and RFC, the ALJ determined there were existing jobs in significant numbers

within the national economy that Plaintiff could perform, such as credit card clerk,

document preparer, and surveillance system monitor. The ALJ therefore

concluded that Plaintiff had not been under a disability, as defined in the Social

Security Act, since September 6, 2016, the date the application was filed.

### D. Framework for Disability Determinations

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### E.    Standard of Review

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

F.    **Analysis**

Plaintiff argues two sources of error. She argues the ALJ erred by not considering the impact of Plaintiff's need for an assistive device, a cane, on Plaintiff's ability to perform sedentary work. As to the second source of error, Plaintiff argues the ALJ did not properly assess the side effects of Plaintiff's medications and thereby failed to create an accurate RFC. The Court shall address each of these arguments in turn.

First, Plaintiff argues the ALJ erred in not considering the impact of Plaintiff's need for a cane on her ability to perform sedentary work. (ECF No. 15, PageID.1070). She asserts the ALJ's discussion of Plaintiff's need for a cane in a

7

work setting "is poorly outlined and internally inconsistent." (*Id.*).  Plaintiff

concedes the ALJ determined Plaintiff had the RFC to perform a reduced range of

sedentary work with the use of a cane, but argues the ALJ's assessment fails to

include the entirety of Plaintiff's documented limitations.  She argues the RFC

does not adequately address Plaintiff's significant limitations with balance and

weakness and therefore fails to adequately address Plaintiff's limitations related to

her lumbar radiculopathy.  (*Id.* at PageID.1071).

The ALJ concluded Plaintiff's use of a cane was "supported by the record"

but noted providers "repeatedly stated that her gait was 'normal' with a cane, or

else failed to observe *any near-falls or note any balance deficiencies that the cane*

*did not correct*."  (ECF No. 10, PageID.74) (emphasis added).  Plaintiff argues the

ALJ's finding conflicts with the finding that Plaintiff needs a cane for ambulation

and inconsistent with "the entirety of the objective evidence and subjective

allegations, which supports the need and use of a cane for standing/balance due to

significant involvement of both lower extremities."  (ECF No. 15, PageID.1071).

Plaintiff argues an EMG of the lower extremities reveled chronic bilateral

radiculopathy at L4-L5 and L5-S1.  (*Id.*).  She also points to an October 13, 2016,

letter from Dr. Osman which noted Plaintiff had been suffering from chronic low

back pain radiating towards the bilateral lower extremities for which she has

attempted physical therapy with minimal relief and bilateral medial branch blocks.

ECF No. 10, PageID.634).  (The letter does not reflect that Plaintiff has balance

issues or that an assistive device is required.  Dr. Osman is a pain management

provider and attempting to help Plaintiff manage her chronic lower back pain).

Dr. Osman noted that, despite these treatments, Plaintiff had not experienced

significant relief of pain and planned to attempt opioid pain management.  Plaintiff

argues the treatment records from Dr. Osman and Ms. McNeill "consistently

document [Plaintiff's] decreased range of motion and use of a cane throughout the

entire period at issue due to lower back and bilateral lower extremity pain."  (ECF

No. 15, PageID.1071) (citing ECF No. 10, PageID.596-601, 623).  Ms. McNeill

documented "Patient uses a cane to ambulate because *she states* that the pain is so

bad in both her legs that her legs give out" and that Plaintiff "should" use an

assistive device to maintain stability and balance "if necessary."  (ECF No. 10,

PageID.596; PageID.597) (emphasis added); (ECF No. 10, PageID.623) (Plaintiff

"[u]ses cane to *ambulate*[.]") (emphasis added).

By June 2017, Plaintiff argues her pain, weakness, and numbness did not

improve and that treatment records from "Beaumont [Trenton] Brain & Spine"

"documented ongoing pain radiating to the bilateral legs with numbness and

weakness, resulting in her legs giving out on her at times."  (ECF No. 15,

PageID.1072).  The Court notes the records from Beaumont Trenton Brain &

Spine document Plaintiff's subjective complaints and state "[s]he states her legs

9

have given out on her at times." (ECF No. 10, PageID.463). Plaintiff points to neurological evaluations which she allege note "gait ataxia and inability to ambulate without the use of any assistive device and need for a cane for ambulation." (ECF No. 15, PageID.1072) (citing (ECF No. 10, PageID.465-466)). The Court notes the transcript does not reflect what Plaintiff indicates. The transcript and records from this appointment indicate "*no* overt gait ataxia and she *does not* require the use of any assistive devices." (ECF No. 10, PageID.466) (emphasis added). Yet the notes do indicate "patient is unable to ambulate without the use of any assistive devices." (*Id.* at PageID.465).

Plaintiff underwent placement of a permanent spinal cord stimulator and noted her pain improved following implantation, but records continued to document the use of a cane for ambulation. (ECF No. 15, PageID.1072) (citing ECF No. 10, PageID.623-627)). Plaintiff points to ongoing pain management records from Dr. Osman indicating chronic spinal tenderness and use of cane for ambulation. (*Id.*) (citing ECF No. 10, PageID.888; 898; 910; 947; 951; 955).

Plaintiff argues she has failed to obtain significant, long-lasting relief of symptoms. (*Id.*). Plaintiff notes that "[w]hile these findings were mentioned in the decision, the ALJ dismissed them and treated them as not severe enough to warrant the severity of Plaintiff's complaints of pain." (*Id.*).

Plaintiff them points to her own subjective complaints contained in her function report.  (ECF No. 10, PageID.375-83).  In the report, she alleged being unable to walk further than half a block at a time before stopping to rest and that she needed a cane at all times.  She claims to need assistance dressing and bathing herself and she could not stand long enough to cook meals or perform household chores.  (*Id.*).  Plaintiff testified at the hearing she needs her cane for use at home and outside and could stand for about 10 to 15 minutes before needing to sit down, but must always be holding onto something while standing.  (*Id.*).  She testified she could sit for about 30 minutes in a comfortable chair and walk about half a block. (*Id.*).

The crux of Plaintiff's argument is that "the ALJ improperly evaluates the record evidence, including a blatant disregard of the many instances where a cane is noted to be required for *balance*."  (ECF No. 18, PageID.1107) (emphasis original).

The Court "will not reweigh the evidence considered by the ALJ."  *Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 1147066, at *2 (E.D. Mich. Mar. 13, 2019) (citing *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)).  The ALJ concluded Plaintiff's use of a cane was "supported by the record" but noted providers "repeatedly stated that her gait was 'normal' with a cane, or else failed to observe any near-falls *or note any balance deficiencies that the cane*

11

*did not correct*."  (ECF No. 10, PageID.74) (emphasis added).  The record
evidence suggests Plaintiff is in some pain and has some functional limitations
resulting from her physical impairments, but the ALJ considered the record and
specifically noted that there was not evidence to support the degree of limitation
that Plaintiff argues today.  The evidence Plaintiff raises before the Court is
Plaintiff's own subjective complaints and subjective complaints noted by providers
during Plaintiff's evaluations.  "ALJs are not required to accept a plaintiff's
subjective complaints as support for a more restrictive RFC."  *Jones v. Comm'r of
Soc. Sec.*, No. 20-11851, 2021 WL 4205061, at *4 (E.D. Mich. June 30, 2021),
*adopted* 2021 WL 3629897 (E.D. Mich. Aug. 17, 2021) (internal citations
omitted).

The ALJ noted the evidence of alleged greater restriction which Plaintiff
relies on before the Court.  The ALJ accounted for Ms. NcNeill's opinion on
Plaintiff's subjective complaints of balance issues, stating that "[a]s of March 15,
2017, Ms. McNeill reported that the claimant presented to an examination using a
cane to ambulate; she advised the claimant to use an assistive device 'to maintain
stability and balance if necessary,' but did not record an actual observation of
instability or an impaired gait."  (ECF No. 10, PageID.72).  The same is true of Dr.
Osman—the ALJ noted Dr. Osman "observed that she favored her left leg while
walking, but that she was able to heel-toe walk without difficulty" and the ALJ

noted Osman's examination notes during 2016 through 2018 "do not reflect any outward distress, weakness, or difficulty using the extremities." (*Id.*).  The ALJ considered the medical opinions Plaintiff points to in support of greater limitation and concluded those opinions did not establish greater limitation.

The substantial evidence standard of review is a constraining one in which courts must give significant deference to the ALJ's "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  Plaintiff's argument is akin to a request for the court to reweigh the evidence in a light more favorable to her, which the Court cannot do.

As to the second source of error, Plaintiff argues the ALJ did not properly assess the side effects of Plaintiff's medications and thereby failed to create an accurate RFC.  "[I]t is proper for the ALJ to consider side effects only where the alleged side effects are supported by objective evidence." *Lorenz v. Berryhill*, No. 18-13793, 2020 WL 1818047, at *6 (E.D. Mich. Jan. 24, 2020) (citing *Farhat v. Sec. of Health & Hum. Servs.*, 1992 WL 174540, at *3 (6th Cir. July 24, 1991)).

Plaintiff asserts she has been prescribed medications "such as Norco, Percocet, Neurontin, Naproxen, Oxycontin, Gabapentin, and Skelaxin, which are medications used to treat chronic pain and [paresthesia]." (ECF No. 15, PageID.1076).  Plaintiff argues that she testified to the side effect of drowsiness, which she also noted in her function report.  (*Id.*) (citing ECF No. 10, PageID.382).

13

In her function report, Plaintiff notes drowsiness as a symptom of her gabapentin, skelaxin, and oxycodone.  (ECF No. 10, PageID.382).  This function report, dated September 8, 2017, is the only record Plaintiff cites to for the proposition that her medication results in drowsiness.  (ECF Nos. 15; 18).

In arguing that remand is warranted, Plaintiff fails to point to any objective medical evidence demonstrating that medication side effects would continue to limit her abilities.  *See Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) ("Although Hopkins complained of drowsiness, nausea, and blurred vision, these conditions were not documented in the record."); *Rogers-Lee v. Comm'r of Soc. Sec.*, 2015 WL 5162269, at *11 (E.D. Mich. July 21, 2015) ("[O]ther than some subjective complaints of being sleepy, there is no objective evidence that the side-effects of her medications, drowsiness or otherwise, have an adverse effect on her ability to work.").  Plaintiff points only to a *single* time when she alleges in one subjective report that she experiences drowsiness as a side effect of her medication.  Plaintiff does not point to any objective evidence that she experiences any side effects, so the ALJ was not required to consider whether the Plaintiff experienced them.  *Lorenz*, No. 18-13793, at *6 (further citation omitted).

Indeed, the objective medical record repeatedly notes that Plaintiff did not experience side effects from medication or denied experiencing side effects.  (*See e.g.*, No. 10, PageID.881; 887; 892; 896; 900; 909; 928; 934; 937; 940; 945; 949;

14

953-54; 962).  This also undermines Plaintiff's claim that omission of reference to "side effects" in the administrative opinion warrants remand.

### G.   Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, the Court **DENYS** Plaintiff's motion for summary judgment (ECF No. 15), **GRANTS** Defendant's motion for summary judgment (ECF No. 17), and **AFFIRMS** the Commissioner of Social Security's decision.


Date:                                          <u>s/Curtis Ivy, Jr.</u>
                                               Curtis Ivy, Jr.
                                               United States Magistrate Judge